## WASHINGTON NAT. INS. CO. v. BUCHANAN.

### No. 12252.

Court of Civil Appeals of Texas. Dallas.

April 17, 1937.

Max R. Rosenfield and Elihu E. Berwald, both of Dallas, for appellant.

John D. Coffman, of Dallas, for appellee.

LOONEY, Justice.

Mrs. Hugh Buchanan sued the Washington National Insurance Company on an accident policy issued by it to Hugh Buchanan, the deceased husband of plaintiff, alleging that, within the terms of the policy, insured sustained accidental injuries resulting in his death. The policy insured against death or disability resulting directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means (subject to certain limitations and restrictions named in subdivisions of the policy called "parts"), the indemnity for loss of life being payable to plaintiff. The parts of the policy brought under review are subdivision (a) of part 4

and subdivision (a) of part 6. Omitting immaterial language, these provisions are as follows: Subdivision (a) of part 4 reads: "If the insured shall during the term of this policy, as provided herein, by the wrecking or disabling of any private pleasure type automobile * * * within which the insured is riding or driving as a passenger * * * suffer within thirty days from the date of the accident any of the specific losses set forth below in this Part Four, the Company will pay the sum opposite such loss. For loss of life—$1000." Subdivision (a) of part 6 reads: "If the insured shall during the term of this policy, as provided herein, by being struck or knocked down or run over while walking or standing on a public street or public highway, by a vehicle propelled by * * * electricity * * * (excluding injuries sustained while on a railroad right-of-way, except an established crossing * * *) suffer within thirty days from date of accident any of the specified losses set forth below in this Part Six, the Company will pay the sum set opposite such loss. For loss of life—$500."

Appellee brought suit, primarily under the provisions of subdivision (a) of part 4 of the policy heretofore set out, alleging that the insured sustained accidental injuries resulting in death, by the wrecking or disabling of the automobile in which he was riding at the time; and secondarily, or in the alternative, set up a cause of action under the provisions of subdivision (a) of part 6 of the policy, alleging that insured was killed by being struck and knocked down or run over by a vehicle propelled by electricity, while walking or standing on a public highway at an established crossing. Appellee alleged that notice was given of the accidental death of her husband, that demand for payment of the amount due under the policy was made, that payment was refused by appellant, praying judgment, under first count for $1,000, and, in the alternative under second count for $500, with interest, reasonable attorney's fee, 12 per cent. penalty, costs, etc.

The facts immediately connected with the accident are these: Assured met death at what is known as the "Bagdad Stop," or station, on the North Texas Traction Company interurban line several miles west of the western limits of the city of Dallas and several miles east of the town of Grand Prairie. At the Bagdad Stop, there are two public highways, both parallel with the interurban track, the old Fort Worth pike located south and the new highway located north of the interurban track; at that point, these highways and the interurban track run east and west, and are connected by a public (graveled) highway running north and south crossing the interurban track just east of the Bagdad Stop. After dark on the evening in question, deceased, Mrs. Gladys Whitworth, and a Mr. Harper, traveling in Harper's automobile, went from the home of Mrs. Whitworth in Dallas to a lunch room at or near the Bagdad Stop and after taking lunch, it was arranged for Mrs. Whitworth to drive deceased to Grand Prairie, where he resided, using Harper's car for that purpose, and that on her return Harper would take her home. According to this arrangement, she and deceased started to Grand Prairie, Mrs. Whitworth driving, and while on the graveled (connecting up) highway at the crossing over the interurban track, the automobile went dead (to use the language of Mrs. Whitworth): "The car went dead and I moved over off the road (to the right). Just at that time the car went dead and the interurban was coming and Mr. Buchanan said 'Jump, Gladys, there comes the interurban,' he jumped out and I jumped out behind and I went to the front of the car." When the automobile came to a stop, it was just a few feet off the graveled portion of the highway and near the south rail of the interurban track. At the juncture that deceased got out of the automobile and was standing between it and the track, an interurban car headed east towards the city of Dallas running about fifty miles per hour passed, the steps of the car striking and instantly killing Buchanan, his body being found lying about the center of the graveled highway; the automobile was also struck or sideswiped, its rear right fender being torn off and the rear right casing knocked down, or flattened. The motorman of the car and a passenger both testified that they saw deceased standing between the automobile and the track just as the car approached.

From these facts we think the conclusion inescapable that, when struck and killed, deceased was out of the automobile, standing on the ground between it and the interurban track, and that the colliding object—the interurban car—at the same time sideswiped and disabled the automobile.

The court submitted both the primary and secondary counts relied upon by appellee, but instructed the jury to disregard the alternative issues if they found the primary one in favor of appellee. So, in response to the primary issue, the jury found that, while

riding in an automobile, as that term was defined, deceased received accidental injuries resulting in death, and that said injuries were the proximate result of the wrecking of the automobile in which he was riding. Based upon these and supplemental findings, the court rendered judgment in favor of appellee against appellant for $1,000, with interest, reasonable attorney's fee, and 12 per cent. damage, from which this appeal was prosecuted.

Under separate assignments and propositions appellant contends that, the evidence being altogether insufficient to raise an issue as to its liability under subdivision (a) of part 4 of the policy, the court erred in submitting the issue, but as requested, should have directed a verdict for appellant; hence the judgment below should be reversed and judgment here rendered in its favor.

■ Thus, we are confronted with this question: Was the death of the insured within the first-quoted provision of the policy; that is, was it caused "by the wrecking or disabling of the automobile"? This question we think must be answered in the negative. While it may be true that the car was disabled by being sideswiped by the interurban car, within the meaning of the policy, yet, in order to fix liability for the death, under the provisions of the policy, a causal connection must have existed between it and the disabling of the automobile. In view of the undisputed facts, we do not think it can be correctly said that any injury was inflicted on the insured by reason of the automobile being disabled; we fail to find in the facts any causal connection between the injuries to the car and the death, which in our opinion, resulted solely from the insured being struck by the passing interurban car, and independently of any injury to the automobile, the only connection being that the disablement of the automobile and the death of the insured were caused simultaneously by reason of the same force, but otherwise were not related.

In the case of Foster v. North American Acc. Ins. Co. (Tex.Civ.App.) 86 S.W.(2d) 476, the court had under construction an identical provision of an accident policy. The automobile in which the insured was riding ran into a depression, throwing him against the top of the car and inflicting serious injuries. The question there presented, was the same as in the instant case; that is, whether the insured was injured by reason of the wrecking or disabling of the automobile. The court denied recovery, holding that the policy afforded protection only against injuries received by reason of the wrecking or disabling of the automobile. In Federal Life Ins. Co. v. White (Tex.Civ. App.) 23 S.W.(2d) 832, 834, the court cited and quoted from the case of McBurgess v. Federal Life Ins. Co., 5 Tenn.App. 284. The automobile McBurgess was driving became disabled, necessitating a change in tires and in elevating the rear end of the car, the jack being used slipped and was thrown against the arm of insured, fracturing the same. In the course of the opinion, the court said: "The question is, was there any unbroken connection between the original event and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the orignal event and the injury? * * * If an intermediate cause disconnected from the primary event and self-operating, produced the injury, there is no liability to be based on the original event. Aetna Ins. Co. v. Boon, 95 U.S. 117, 24 L. Ed. 395." After the quotation, Judge Stanford for the Waco Court, said: "Judgment was rendered for the insurer, and correctly so, solely upon the ground that the disablement of the car was not the proximate cause of the injury, but the slipping of the jack, a new and independent cause, was such proximate cause."

■ We do not think the authorities cited by appellee, on the question under consideration, are in point. If the policy had simply protected against injury while riding within the automobile, as the insured was forced out of the automobile under the circumstances shown, doubtless we would hold that his death occurred within the meaning of such provision (Southern Surety Co. v. Davidson [Tex.Civ.App.] 280 S.W. 336, and authorities cited), but such was not the case. To establish liability under the provision of the policy under consideration, the proof would have to show, not only that the injury to the insured was received while riding or driving within the automobile (within the meaning of that language), but that the same was caused by or had a causal connection with the wrecking or disabling of the car.

We therefore sustain appellant's assignments and hold that, under the facts, no recovery can be had under subdivision (a) of part 4 of the policy.

■ However, we are of opinion that the evidence sufficiently supported the alter-

native count, based upon subdivision (a) of part 6 of the policy, requiring its submission to the jury; therefore, the case is remanded for trial on that issue.

Reversed and remanded.