## SHRADER v. UNITED STATES.

### No. 11009.

United States Court of Appeals
Sixth Circuit.

March 24, 1950.

Walter Chandler, Memphis, Tenn., for appellant. Walter Chandler and Ramsay Wall, Memphis, Tenn., on the brief.

Edward N. Vaden, Memphis, Tenn., for appellee. H. G. Morison, Washington, D. C., John Brown and Edward N. Vaden, Memphis, Tenn., on the brief.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

HICKS, Chief Judge.

Libellant-appellant, Mattie L. Shrader, mother of James Leon Shrader, and the beneficiary of a Second Seaman's War Risk policy insuring her son, seeks to recover the sum of $5,000 by reason of the death of the insured directly and proximately caused by risks of war and warlike operations. The district court, sitting without the intervention of a jury, dismissed the libel; hence this appeal.

James Leon Shrader was the owner of the policy which was in force at the time of his death. On December 16, 1945, he was a member of the crew of the S. S. Robert Treat, which was being operated for the use of the War Shipping Administration, an agent of the United States. The vessel was anchored in the harbor of Agusan, Island of Mindanao, Philippine Islands, for the purpose of unloading military supplies and loading personnel in the evacuation of troops. It had a complement of guns but on the date mentioned was without ammunition. Although the Japanese Army in the Philippines had formally surrendered, Mindanao was still infested with Japanese guerillas and savage Moros, who sniped and preyed upon American troops, about 15,000 in number, stationed on the island at the time of the arrival of The Robert Treat.

Shortly after her arrival and between the hours of 8:30 and 9:20 P.M., a deranged Negro, one Justice Warren, a corporal in the 824th Amphibious Truck Company of the 144th Regiment, 31st Division of the Army stationed at Agusan, pulled alongside its lower gangway in a small boat called a "duck." He allowed the "duck" to drift and proceeded up the gangway to the main deck, and upon arriving there drew a regulation Army pistol, grabbed the sailor on duty and demanded that he be shown to the captain's room. The sailor broke away and ran to report to his commanding officer. Warren then walked to the deck washroom, occupied by Shrader and two other sailors. Upon entering the washroom Warren began firing at the sailors without any provocation. In an effort to escape, Shrader entered the toilet and was followed by Warren, who shot and killed him. Warren then fired at the other sailors and struck one of them several times with his pistol. He ran out on the deck and continued firing until he was subdued after a struggle involving many others, one of whom was the captain of the vessel, who was also wounded. Neither Shrader nor any of the crew had known the soldier nor had any contact with him before he boarded the ship. Warren was turned over to the military authorities on Mindanao, where upon inquiry, he was found to be insane. He, along with

all the troops on Mindanao, went armed to protect themselves against hostile Japanese and guerillas.

There is no controversy as to any of the above recited facts.

Shrader's war risk insurance policy expressly insured him against " * * * loss of life * * * of the insured, directly and proximately caused by risks of war and warlike operations, including restraints * * * in the prosecution of hostilities. * * *"

It cannot be seriously controverted that at the time of Shrader's death The Robert Treat, its officers and members of its crew and the armed forces to which Warren belonged, were engaged in warlike operations. The truck company to which Warren belonged was used to unload military supplies from vessels anchoring at Agusan. Yamashita, the Japanese General in the Philippines, had ceremoniously surrendered his army in September but actual hostilities continued to the extent that it was necessary for the American soldiers to remain armed and on the alert.

■ The district court after finding the facts substantially as above set forth decided as a matter of law that Shrader's death was not directly and proximately caused by risk of war or warlike operations. We cannot agree. It is true enough that insured's death was caused by the pistol shot and that this was the last direct act in the line of causation but this was not the predominant cause of his death. The proximate cause lies back of this. The fatal shot was fired by an insane soldier without any provocation whatever. Shrader was killed while in line of duty as a seaman. We think that there is substantial evidence that his death is primarily chargeable to Warren's mental condition. But for his insanity the lethal shot would not have been fired; the unfortunate affair aboard ship would not have occurred and, indeed, Warren would not have come aboard at all. His wholly unreasonable excuse for coming was that he came to see the captain and tell him that he wanted to go home. The

proximate cause of an injury is not necessarily that which is last in time. Proximate cause is the procuring and efficient cause. In Insurance Co. v. Boon, 95 U.S. 117, 133, 24 L.Ed. 395, the court said: "The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the last." See, also, Muller v. Globe & Rutgers Fire Ins. Co., 2 Cir., 246 F. 759, 762.

■ This brings us to the question, whether Shrader's death at the hands of an insane soldier was one of the risks and perils insured against. In determining this question, as well as that of proximate cause, the policy should be liberally construed. Sutton v. United States, D.C., 73 F.Supp. 996, 998; Quinn v. United States, D.C., 72 F.Supp. 94, 96. The operations of The Robert Treat were warlike in their nature. There is substantial and uncontroverted evidence that Warren's insanity was due to the stress and strain of the military activities on Mindanao. The evidence is that a number of soldiers "broke" under the ordeal of jungle warfare on that island, and it is a matter of common knowledge that soldiers in active military service under such conditions frequently "cracked up." There is expert evidence to the effect that such occurrences could be reasonably anticipated. Giving a liberal construction to Shrader's policy, we think that his death falls within its coverage.

Appellee leans heavily upon the case of Reinold v. United States, 2 Cir., 167 F.2d 556. In that case there was an entire absence of causal relations of warlike operations to the death of Backus. To put it very simply, Backus was killed in a drunken brawl, and we do not regard that case as apposite.

The decree of the district court is reversed and the case remanded with directions to enter judgment for the amount of the policy sued on and interest thereon from the date of the decree in the district court.