### ATCHISON, T. & S. F. RY. CO. v. HINES.

(Circuit Court of Appeals, Fifth Circuit.   December 8, 1913.   Rehearing Denied March 31, 1914.)

No. 2,555.

1. MASTER AND SERVANT (§ 296*) — ACTION FOR INJURY TO SERVANT — NEGLIGENCE OF PLAINTIFF.

Plaintiff, who was a fireman on defendant's railroad, was injured by the explosion of the water gauge on his engine which he was attempting to fix to prevent leakage. He alleged and testified that the screen around the glass was improperly fastened with a nail and fell off when he removed the nail just prior to the explosion. The testimony showed without contradiction that, had the screen been in place, plaintiff would not have been injured; that the glasses break from unaccountable causes; that when a glass becomes leaky the proper way to repair it is to first turn off the steam and water cocks, and drain the glass before removing the screen; and that plaintiff knew such facts. Held, that the refusal of a properly requested instruction, submitting the issue of plaintiff's negligence and instructing the jury that if they found such negligence he could not recover, was error.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

*(Per Shelby, Circuit Judge, Dissenting.)*

2. JURISDICTION OF FEDERAL COURTS—ALLEGATION OF CITIZENSHIP.

A petition, which alleges merely the state of plaintiff's residence, is insufficient to show jurisdiction in a federal court on the ground of diversity of citizenship.

3. ACTION FOR INJURY TO SERVANT—EMPLOYERS' LIABILITY ACT.

In an action against a railroad company for injury to an employé while employed in interstate commerce, based on Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), section 3 of which expressly provides that contributory negligence shall not bar a recovery and that plaintiff shall not be held guilty of contributory negligence in case the violation by defendant of any statute enacted for the safety of employés contributed to the injury where the alleged negligence of defendant was in the use of a locomotive having on the boiler a defective and dangerous water glass, in violation of Act Feb. 17, 1911, c. 103, § 2, 36 Stat. 913 (U. S. Comp. St. Supp. 1911, p. 1333), the court could not properly instruct the jury to return a verdict for defendant in case they found that plaintiff was chargeable with contributory negligence.

4. ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

In such case, the fact of the defective condition of the glass being clearly established, whether the negligence of defendant in permitting its use was the proximate cause of the injury was a question of fact for the jury.

5. SUFFICIENCY OF EXCEPTIONS TO REFUSAL OF INSTRUCTIONS.

A judgment cannot be reversed on a general exception to the refusal to give two requested instructions if either was properly refused.

In Error to the District Court of the United States for the Western District of Texas; Thomas S. Maxey, Judge.

Action at law by Harry K. Hines against the Atchinson, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

J. W. Terry and A. H. Culwell, both of Galveston, Tex., for plaintiff in error.

George E. Wallace, of El Paso, Tex., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and CALL, District Judge.

CALL, District Judge. This suit was filed in the District Court of the United States for the Western District of Texas, at El Paso, Tex., by Harry K. Hines, the defendant in error, against the Atchison, Topeka & Santa Fé Railway Company, the plaintiff in error, claiming damages growing out of personal injuries sustained by said Hines, who was employed as fireman by the said corporation.

It is alleged in his petition that the said corporation, the railroad company, had a line extending through the states of California, Arizona, and New Mexico, and into the state of Texas, and was engaged in such business as an interstate carrier of goods and passengers; that on or about November 7, 1911, he, as a locomotive fireman in the service of the said corporation running between Barstow, Cal., to Parker, Ariz., was called to take a train as fireman from Parker to Barstow, and that while preparing the engine for the trip the water glass suddenly broke, causing a piece of glass to strike him in the eye; that the engine prior to said time was being used by the defendant in interstate traffic, and that it was the duty of the railroad company to furnish him with an engine and water glass attached thereto that was in a reasonably safe condition; that it failed to do so; that the water glass on his engine, by reason of long use or manner of inspection and repair, had become out of order and dangerous; that it was improperly and unskillfully fastened and maintained by reason of old, defective, and worn joints, or, by reason of the unskillful manner in which it and its appliances were placed on the engine, it was caused to leak and air was permitted to enter the boiler through the same, and that by reason thereof it was caused to explode; that if said water glass had been in a reasonably safe condition and skillfully placed and maintained on the boiler, and the joints properly fastened, it would have been airtight, and would not have leaked either water or steam, and would have been reasonably safe; that the defendant and its authorized agents, prior to the happening of this accident, knew that this water glass was old and defective and was leaking both water and steam, or by the exercise of ordinary care could have known these facts; that, while he was preparing the engine for the trip, he discovered that the water glass was leaking water or steam, or both, and that it became his duty to repair the same, and while making the inspection discovered that a nail had been inserted in the screen, or through the screen, which he endeavored to pull out, whereupon the screen surrounding the water glass fell off, at which time the water glass exploded; that this screen is used to surround the water glass for the purpose of protecting employés on the engine, in the event it should explode; and that when properly fastened and maintained this screen is a protection from flying glass, and in not securely fastening the same with screws and lugs, instead of with a nail, that the corporation was guilty of negligence;

that at the time of the accident he was assisting in transporting interstate shipments of goods and passengers between California and Arizona, and by reason of the exploding of the glass was injured.

The defendant answered by a general denial, and pleaded specially that, if the plaintiff was injured at the time and place alleged, the same was brought about by his own contributory negligence, and that he was furnished with a water glass properly protected by a wire screen or shield; that it was not his business to fix or deal with the water glass without first reporting the matter to the engineer in charge; and that he was further guilty of contributory negligence in that the proper way to fix the water glass, if it was leaking, was to first cut off the steam and water in the pipes or valves leading to the water glass and drain the same so that there would be no pressure and no chance for it to explode; that he failed to take this precaution and negligently removed the screen or shield before turning off the water and steam; and further that by reason of these facts plaintiff assumed the risk of the dangers encountered from which the injuries were received.

The case on these issues proceeded to trial, and a verdict and judgment was rendered in favor of Hines against the corporation for the sum of $10,000.

The defendant corporation, after the testimony was in and argument made to the jury, at the proper time asked three special instructions. The first two special instructions were refused by the court, and the third given; the court giving also a general charge.

The testimony in this case shows without contradiction that had the screen remained upon the glass the explosion would not have damaged Hines, the plaintiff. He says himself that, had the glass exploded when the screen was around it, there would have been no chance for him to have been hurt. The uncontradicted evidence shows further that these glasses break from no accountable reason, and the plaintiff, Hines, was aware of this fact; that where a glass becomes leaky, either of water or steam, the proper way to repair the leak was to have first turned off the steam at the top and the water at the bottom and drained the glass, and then removed the screen and repaired the glass; and that the plaintiff, Hines, was aware of this; and that had he proceeded in this manner no injury would have occurred to him.

[1] Charge No. 2, which was refused in this case, reads as follows:

"You are instructed that if you believe from the evidence that the water shield incasing the water gauge was fastened with a nail, and you believe that that nail safely fastened it so long as it was left alone, then, if you believe from the evidence that the plaintiff was negligent in pulling out the nail without first turning off the steam valve and the water valve and opening the drain cock, you are instructed to find for the defendant."

It seems to us that this charge ought to have been given by the trial court. The issue was made that the nail did not properly fasten the shield. That was one of the issues made in the case by the pleadings, and it should have been submitted to the jury in such a way that the jury might determine that issue in arriving at what was the proximate cause of the injury.

It is true that the court gave special instruction No. 3, asked by the defendant, but that instruction went only to the extent of submitting

to them the question as to whether the nail safely fastened the shield. This instruction No. 2 goes further and submits to the jury that issue as well as the other issues contained therein, which directly challenged the question of whether the plaintiff was guilty of negligence in so pulling out the nail and dropping the screen and leaving the glass unprotected at the time he was hurt, and before taking the proper precautions to make the water glass harmless. For if this screen was securely fastened and held by the nail and no damage could have happened to Hines had he not first removed the screen by taking out the nail, before making the glass harmless, by turning off the steam and water and draining the glass, then his act in removing the nail before taking precautions, usual and necessary in such cases, which precautions were well known to him, was the direct and proximate cause of the injury sustained. And in this connection it must be borne in mind that the court charged the jury that if this nail securely fastened the screen the company had not violated the law by not having a screw or lug. The mere fact of a leaky water glass, under all the testimony, if properly screened, cannot, we think, be construed into a defective boiler or appliances. Such a state of affairs is to be looked for at any time, happening for no apparent reason, and one remedied in perfect safety by the fireman of the different engines daily.

It is impossible for this court to say whether, if that charge had been given, the jury would have found for the plaintiff. It is an issue at least that ought to have been submitted. The particular issues attempted to be submitted to the jury in this charge are not covered by the general charge of the court, nor by the special charge given at the instance and request of the defendant; and it was error in the trial court not to have given the charge asked.

For this reason the judgment of the lower court is reversed, and the cause remanded, with instructions to grant a new trial and proceed with said cause in pursuance to the views herein expressed.

SHELBY, Circuit Judge (dissenting). This action was brought in the court below by the defendant in error against the plaintiff in error. The former will be referred to as the "defendant," and the latter as the "plaintiff." The suit is under the Federal Employers' Liability Act (chapter 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), for personal injuries alleged to have been received by the plaintiff by the negligence of the defendant. The injury caused the plaintiff's entire loss of sight in one of his eyes, and the sight of the other was greatly impaired. The averments of his petition are substantially stated in the majority opinion. The defense pleaded was a general denial, and that the plaintiff was guilty of contributory negligence. The facts alleged as such contributory negligence are substantially as stated in the majority opinion, being, in effect: (1) That he should have reported the condition of the water glass first before trying to fix it; and (2) in not pursuing the proper course in fixing the water glass. The issues were found in the plaintiff's favor by the jury, and, of course, the case stands here on the questions of law presented on the record.

[2] 1. The defendant, in this court, claims that the court below was

without jurisdiction, and the plaintiff seeks to maintain the jurisdiction on the ground of diversity of citizenship, and, also, on the ground that a federal question is involved, the suit being under a federal statute. There is an averment that the "plaintiff resides in El Paso county, Tex.," but that averment is wholly insufficient as an allegation of citizenship. To show the jurisdiction, as based on diversity of citizenship, the citizenship of the plaintiff should be alleged (not merely his residence) and that the defendant corporation was incorporated under the laws of a state (naming the state) other than that of which the plaintiff is a citizen. 4 Ency. U. S. Sup. Ct. Reps. 939; Knight v. Lutcher & Moore Lumber Co., 136 Fed. 404, 69 C. C. A. 248. For the petition to show jurisdiction under the Federal Employers' Liability Act, it should aver that the injuries to the employé were sustained while the company was engaged, and the employé was employed, in interstate commerce. St. L. & San Francisco Ry. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129.

It may be that other parts of the record than the petition show jurisdictional facts—a matter of no moment at present, as the majority have reversed the judgment, and the petition may be so amended below as to remove all doubt as to jurisdictional averments.

2. The evidence tended to show that the water glass, an appurtenance or appliance of the engine and boiler, was out of order and leaking, and that the screen that is placed around the water glass for the protection of the fireman, which is also an appurtenance, was not secured in the proper manner; that it should have been secured by set screws or lugs; that one of the lugs or screws had come out, and in its place a nail had been inserted; that the nail was not a secure fastening, but was loose, so that it could be pulled or pushed out by hand; and that the plaintiff was ignorant of the fact that the lug or screw had come out and the nail had been substituted; that there had not been such inspection by the defendant's agents as to discover and repair the defect. The plaintiff's own testimony showed what occurred at the instant of the explosion:

"When I saw the condition this glass was in, I thought I ought to fix it before we left, so I reached for the steam valve with one hand and started to turn it off. I was in the position I have indicated when I noticed a nail sticking through the screen around the water glass. I wondered what the nail was there for. It was a little in front of the glass. The screens are not attached to the water gauge permanently, but are attached so as to move back and forth. As I turned the valve with one hand and pulled the nail out with the other, the screen flew apart and the glass burst, causing the accident. The screen around the glass is intended for the purpose of protecting the engineer and fireman. The screen shown me is as near a reproduction of the screen on the engine at the time of the accident as I could get. I have placed the gauge at about the height and position it was on the engine and have indicated the manner in which the nail was sticking in the screen. The screen is fastened with lugs. It is placed around the glass and clamped together, and in order to take it off or put it on, one has to use both hands. The screen protects the fireman and engineer from flying glass when the water glass breaks. I could not see just exactly where the nail was, as it ran behind the glass. I did not know that the nail was used for holding the screen together at the time I took it out, as all I could see was the nail sticking through the screen in front of the glass. I could not say whether or not there was any danger in the nail being in the position I found it, though it possibly might have broken the glass; but it had no business where it was."

[3] The opinion of the majority holds that the trial court erred in refusing to give charge No. 2, which is as follows:

"You are instructed that if you believe from the evidence that the water shield incasing the water gauge was fastened with a nail, and you believe that the nail safely fastened it, so long as it was left alone, then, if you believe from the evidence that the plaintiff was negligent in pulling out the nail without first turning off the steam valve and the water valve and opening the drain cock, you are instructed to find for the defendant."

The charge, in substance, is that, if the plaintiff was guilty of contributory negligence by the act described in the charge, "you are instructed to find for the defendant." The effect of the charge was to instruct a verdict for the defendant if the plaintiff was guilty of contributory negligence. That the charge is so understood by this court is shown by its opinion that the charge "directly challenged the question of whether the plaintiff was guilty of negligence," etc.

In Winfree v. Nor. Pac. Ry. Co., 227 U. S. 296, 302, 33 Sup. Ct. 273, 274 (57 L. Ed. 518), the court said, in construing the act under which this suit is brought: "It introduced a new policy and quite radically changed the existing law." The most radical departure made by the statute from former rules is in the total abolition of the doctrines of contributory negligence and assumption of risk, as formerly enforced by the courts, in all cases embraced by the statute, where the violation of any federal statute enacted for the safety of employés contributed to the casualty upon which the suit is based. Sections 3 and 4 of the act are as follows:

"Sec. 3. That in all actions hereafter brought against any such common carrier, by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, or where such injuries have resulted in his death, the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé: Provided, that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

"Sec. 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé." 35 Stat. 65, 66.

These sections prevent the defense of contributory negligence from completely barring any action properly brought under the act. That defense can go no further than to diminish the damages in proportion to the amount of negligence attributable to the employé. But the effect of the proviso to section 3 is that, in cases where the violation by the carrier of any statute enacted for the safety of the employés contributed to the injury, the employé shall not be held to be guilty of contributory negligence so as to diminish the damages. That distinction, however, need not be emphasized, for the charge the trial judge refused was not that the employé's contributory negligence diminished the damages, but that it completely barred the action. The

instant suit, both by the petition and the proof, is shown to charge the violation of a statute enacted for the safety of employés. The statute violated is one "to promote the safety of employés," etc., and the second section provides:

"Sec. 2. That from and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this Act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." Act Feb. 17, 1911, c. 103, 36 Stat. 913 (U. S. Comp. St. Supp. 1911, p. 1333).

It seems plain that if the trial judge had given the instruction asked —that the negligent act described in the charge, if found to have been committed, entitled the defendant to a verdict—he would have disregarded the statute under which the suit was brought, and which it was his duty to enforce.

[4] 3. There can be no doubt that the defective condition of the appliances—the leaking of the water glass and the substitution of a nail for a set screw or lug in the screen—was the proximate cause of the accident. As to whether the negligence of the defendant in permitting such defects in its engine was the proximate cause of the injury was a question of fact in this case, and it was found in the affirmative by the jury. The original wrong must be considered as reaching to the effect, and proximate to it. The original wrong was the furnishing to the plaintiff a defective and dangerous engine.

"The question is not what cause was nearest in time or place to the catastrophe. * * * The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation." Insurance Co. v. Boon, 95 U. S. 117, 130 (24 L. Ed. 395).

Defective appliances would not often cause injury to the servant unless he tried to use them. If he is guilty of contributory negligence in the use of them, in the absence of statutes abolishing or limiting that defense, it might be a bar to the action; but that defense, as we have seen, is not permissible in this case.

[5] 4. But if the controlling statutes be disregarded, the judgment cannot be reversed on the exception as taken, without disregarding the rules of procedure heretofore considered controlling. The bill of exceptions shows that the court was requested to give "the three following special charges," copying them as numbered separately. The court gave the third charge, but refused to give those numbered 1 and 2. The charge numbered 1, so far as the majority opinion shows, was properly refused, for it is not decided that it should have been given. The exception was taken to the refusal to give the two charges, Nos. 1 and 2.

"And be it further remembered," the bill of exceptions reads, "that the court refused to give special charges Nos. 1 and 2 so requested; and defendant excepted to the ruling of the court in refusing said special charges."

Under the rule, unless both charges were such as should have been given, the judgment should not be reversed for refusing them.

"Where a general exception is taken to the refusal of a series of instructions, it will not be considered if any one of the propositions is unsound." Union Pacific Ry. Co. v. Callaghan, 161 U. S. 91, 95, 16 Sup. Ct. 493, 495 (40 L. Ed. 628); Newport News & Mississippi Valley Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887; 2 Ency. U. S. Sup. Ct. Reps. p. 101 and notes.

It is only by disregarding this well-established rule that the judgment could be reversed.