## WRIGHT v. ÆTNA LIFE INS. CO. *

(Circuit Court of Appeals, Third Circuit. February 3, 1926.)

### No. 3361.

**I. Insurance ⟐668(3)—Where facts are undisputed, court should construe policy, and decide if it applies.**

Where facts on which liability of insurer is predicated are undisputed, it is duty of court to construe policy, and decide if it applies.

**2. Insurance ⟐146(3)—Automobile rider, issued in consideration of additional premium, construed to sustain indemnity sought by assured.**

Additional policy, in form of automobile rider, issued in consideration of payment of additional premium, is governed by construction canon that, when words of policy are, without violence, susceptible of two interpretations, that which will sustain the indemnity assured sought to obtain should be preferred.

**3. Insurance ⟐527—Automobile rider, attached to policy covering injuries to assured "while riding in" car, construed.**

An additional policy, in form of automobile rider, covering injuries received "while riding in" automobile, *held* to cover accidents which might reasonably be expected to happen to one riding in a car, and to cover injury received when assured jumped or was thrown from car after driver lost control.

**4. Insurance ⟐146(3)—Court justified in resolving ambiguity, which could have been easily removed, against insurer.**

Where automobile rider attached to policy, though containing certain exceptions, did not provide against liability to assured, who jumped from machine, court was justified in resolving ambiguity as to liability against insurer.

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Suit by Helen A. Wright against the Ætna Life Insurance Company. Judgment for plaintiff for part only of recovery sought, and she brings error. Reversed and remanded.

John P. Kelly, of Scranton, Pa., and P. F. O'Neill and F. W. Wheaton, both of Wilkes-Barre, Pa., for plaintiff in error.

W. A. Valentine and James P. Harris, both of Wilkes-Barre, Pa., for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and CLARK, District Judge.

BUFFINGTON, Circuit Judge. On October 9, 1907, the Ætna Life Insurance Company, in consideration of the payment to it of a premium of $25, issued to Thomas A.

*Rehearing denied May 6, 1926.

Wright an accident insurance policy for $5,-000, insuring him "against disability or death resulting directly and independently of all other causes from bodily injuries effected solely through external, violent, and accidental means." The policy continued in force until the death of the insured under circumstances hereafter noted. Suit was brought on such policy and recovery of the full amount had in the court below. The company conceded its liability therefor, so that with that policy we are not concerned.

On October 31, 1910, the company in consideration of the payment to it of a premium of $10 issued to. the insured an additional policy—in form an automobile indorsement or rider on his foregoing policy—for indemnity against "bodily injuries through external, violent, and accidental means, while he is riding in, operating, or caring for a private automobile," and for "an additional principal sum of $5,000." On this latter policy the beneficiary declared in the same suit. A verdict and judgment in favor of the insurance company was entered for plaintiff on the first policy and for defendant on the second. Thereupon the plaintiff sued out this writ of error.

The facts in the case, which are undisputed, are these: On September 27, 1921, the insured was riding down a mountain road of steep grade in the private automobile of a friend, who was driving. In the descent the driver, in attempting to change gear, for the time being lost control of the car. When he finally got it under control, he found the deceased had disappeared, and, going back, found him lying face down on the road. He was unconscious and so fatally injured that death ensued the next day. No one saw how or when he left the car, and, other than the fact that when the car got out of control he was in it, and when control was regained he was not in it, everything was speculative. Did the policy cover such an accident? That the physical injury suffered by the deceased was inflicted when he struck the road, and not when he was in the car, is clear, and therefore, adhering to the literalism of its policy the company contends the deceased, when injured, was not "riding in the car," and therefore, looking at the injury and accident as occurring at the instant his head struck the roadway the situation was one not covered by the policy. On the other hand, it is contended that the real accident was losing control of the car, and if the deceased was then riding in the car, and one of the natural and to be expected results of that lost control was that he might leave the car, then the policy covered the situation.

The trial judge regarding, but wrongfully, as we shall see, the case as one of double indemnity, sought to find a middle course by writing into the policy the motive or absence of motive of the deceased in leaving the car, and held that, if the deceased was thrown from the car, then the injury was inflicted while he was "riding in" the car; but, if he jumped from the car to save himself, the injury was inflicted when he was not "riding in" the car, and so instruct the jury. But the policy nowhere makes such a distinction, the parties did not so contract, and to write motive or absence of motive in leaving the car as one of the terms of the contract is to make a contract for the parties which they neither made nor wrote. This contract dealt with facts, not motives. It specified a situation in which alone the company was to be liable. It did not insure when another situation arose, no matter how that change of situation came about, and if the deceased was not injured "while he is riding in" a car, then the policy, measured as it must be by its mere literalism, simply does not cover an injury suffered when he is not riding in the car, no matter what the circumstances or motive that got him out of the car; for it makes no difference to our mind, so far as the literalism of the contract is concerned, whether the change of situation was a physical stress caused by the uncontrolled car throwing him out, or a mental stress constrained by the instinct of self-preservation which resulted in his jumping out.

[1] Taking, then, the removal most favorable to the company, namely, a leap by the insured from the car to save himself we have the question whether such a case is covered by this policy. The facts are undisputed, and it is therefore the duty of the court to construe the policy and decide whether it applies. Assuming, then, that the car got beyond control on this steep road, that the deceased was then sitting in it, and before control was regained leaped from the car to save himself as the jury found he did, is such a situation covered by the policy?

[2] Addressing ourselves to the court's duty to construe the policy, we note that this is not a case of double indemnity on a single premium, but one of double or additional premium for an additional original indemnity; for the indemnity in this case is, as the policy recites, for "an additional original principal sum of $5,000," and for this particular indemnity an additional premium was

paid. We therefore do not have a case of double indemnity, where the insured seeks to cover an exceptional situation not covered by its general terms, and where, referring to canons of policy construction, "the court," as said in Depue v. Travelers' [Ins. Co. (C. C.)] 166 F. 183, "recognized that the situation had changed." On the contrary, we have the usual situation of an original undertaking involving an individual indemnity based on an individual premium, and therefore governed by the construction canon that, when the words of a policy are, without violence, susceptible of two interpretations, that which will sustain the indemnity it was the object of the assured to obtain should be preferred. Insurance Co. v. Boon, 95 U. S. 128, 24 L. Ed. 395.

Now, what was the object of the insured when he contracted for indemnity? There can be no doubt it was for his protection while riding in an automobile—protection against what? The answer is manifest: Against the dangers to which one riding in an automobile is subjected. Collision, overturning of machine, the machine leaving the road, etc., are naturally anticipated; but in the same category, and one of the grave dangers, especially in such a hilly and mountainous region as Pennsylvania, where, as appears by indorsement, this policy became effective, is loss of car control. But in loss of control on steep grades one of the most common happenings is the fright, and indeed hysteria, of a helpless passenger, which, coupled with the instinct of self-preservation, leads to his or her jumping from the car.

Having, then, in view, as these contracting parties had, the dangers incident to riding in an automobile, and among them loss of car control on steep grades, is it possible to believe they shut out from consideration, and therefore from their contract as a common incident and consequence of that danger, the panic, hysteria, and self-preservation instinct naturally and reasonably to be expected in such a situation? Were these factors, common to the conduct of those suddenly confronted by danger, ignored, and their usual dangerous consequences not insured against? Was it contemplated that at such time the helpless passenger would and should sit supine, and run the risk of the machine colliding with other machines, with its being overturned, or with its leaving the road, in its uncontrolled descent? Was it contemplated the passenger, confronted by danger, panic-stricken by fear, must do nothing in order to have the benefit of his indemnity, when by leaping he might not only save his own life,

but the company as well from loss? For, indeed, to ignore, to fail to provide for, to rigidly constrain the car rider to supine inaction under such circumstances, and to say his policy so intended, is to fly in the face of common experience.

Recognizing the usual incidents in collisions and accidents, the law has brought into its legal nomenclature the phrase "in extremis," and held that, where danger is faced in an accident, unwise action shall not prejudice a man, a vehicle, or a vessel. If one were insured while "riding in a motorboat," and circumstances arose where the steering gear ceased to control and the vessel was headed for a dam, rapid, or other vessel, and a frightened passenger jumped out to save himself, and thereafter succumbed and was drowned, while not riding in the motorboat, a reasonable man might contend that under such circumstances the passenger was covered by such policy, although actual death came from drowning. In the present case the real accident was not when Wright's head struck the road, but when car control was lost. Such lost car control was the critical accident time, and the dominating factor which subjected the riding passenger to present peril and later death.

[3] That constraining, existing accident might result in different, and to be expected, consequences; but in any event the accident of lost car control was the proximate cause of the rider's death, whether the swerving of the car threw him out physically, or the nervous strain caused him to leap in fright, hysteria, or in answer to the instinct of self-preservation. What followed was an injury more or less commonly incident to such lost car control. We cannot bring ourselves to the belief that the parties to this policy meant that this usual result of loss of car control was not to be covered by this policy, for, if it was, no one would care to pay a premium for automobile protection. To us it is more reasonable to believe that, assuming the insured desired protection "while riding in" a car, and a fair-minded insurance company meant to sell and give him such protection, that the common contracting purpose of the two would be that the insured was to be protected from the time he started riding at a journey's beginning, and continued until he ceased riding at its end, and that the words "while riding in" the car referred to the intervening riding time, and if, during such time, injury was suffered from an accident which might reasonably be expected to happen to one so "riding in" a car, that the

words "while riding in" were meant to cover and did cover a situation such as we now have.

[4] Automobile risks, automobile dangers, automobile occupants' conduct, were not new subjects of insurance study when this policy was executed. Indeed, an insurance company's knowledge of the subject, its wide experience with accidents and human conduct at such times, its commercial instincts and its desire to get business, would assure it that, if it wrote into its policy or said to an inquiring customer, "This policy does not cover the case of leaping from a car when car control is lost," no one would pay an extra premium for an indemnity that so failed to indemnify. If this company did not intend that one who jumped from a machine was not to be protected, it could have made that unambiguous in a few words. It considered the matter of exceptions, for it inserted four. If by its omission to do so it has couched the policy in such terms that reasonable men could reasonably contend, it applied to and covered a situation such as is now before us, we are justified under the settled rule of construction in resolving that ambiguity against the company and giving the policy such construction. To do otherwise would be to deprive one riding in a car of protection from one of the grave dangers incident thereto.

So holding, we regard the case as one requiring the court itself to construe and apply the policy, and in the light of such construction to hold that, if the case is one where control of a car was lost, and that while lost an occupant suffered injury, the indemnity applied, whether he was thrown from the car by physical force, or, exercising ordinary care and prudence, he leaped from the car under mental force impelled by fright or the instinct of self-preservation. We therefore reverse the case, and remand it to the court below for further proceedings, in accord with this opinion.

The conclusion we have reached is in accord in principle with the authorities, for in citing the case of Lund v. Tyngsboro, 11 Cush. (Mass.) 563, 59 Am. Dec. 159, as supporting its opinion, the Supreme Court of the United States, in Insurance Co. v. Boon, supra, said: "In [Lund] v. [Tyngsboro], * * * where it appeared that a traveler had been injured by leaping from his carriage, exercising ordinary care and prudence, in consequence of a near approach to a defect in a highway, the town was held liable, though the carriage did not come to the defect. The defect was regarded as the actual, the dominating, cause. And in this court similar doctrine has been asserted."

WOOLLEY, Circuit Judge (dissenting). I am constrained to dissent from the judgment of the court for reasons which I shall state very briefly.

The action is not in tort; it is on a contract. The contract is one of insurance. Like all contracts it should be construed as the parties wrote it. It provides in terms for indemnity to the insured in the event of his sustaining "bodily injuries through external, violent and accidental means, while he is riding in * * * a private automobile." The trial court submitted to the jury an issue of fact, namely; whether the insured sustained his injuries by being thrown from the car or by voluntarily jumping out, and, construing the contract as it reads, instructed them that if they should find the latter fact their verdict must be for the defendant. The evidence was meager, a doubtful emergency, and the discovery of the insured's body about three hundred feet back from the place where the car was stopped. The verdict for the defendant was a finding that the insured jumped. On this finding I cannot see how his injuries were sustained "through external, violent and/or accidental means while he (was) riding in" a car—the only three risks in a restricted situation insured against. Nothing of an external, violent or accidental nature happened to the insured until he left the car and assumed hazards which, as I read it, the policy does not cover. To embrace these hazards the contract of insurance must be expanded by words which the parties did not use and be given a meaning which its words do not import. In refusing to do this, the learned District Judge, I think, was right.