## WRIGHT v. ÆTNA LIFE INS. CO.

(District Court, M. D. Pennsylvania.    January 27, 1927.)

### No. 1407.

Insurance ⬤═527—"Automobile indorsement" on accident policy insuring against accidental injury while riding in private car, held to cover death caused by leaping from car out of control on a steep mountain road.

Insured, who held an accident policy issued by defendant, paid an additional annual premium for an "automobile indorsement" or rider insuring him against accidental injury while "riding in, operating, or caring for a private automobile." He was riding down a steep mountain road in the private automobile of a friend, when the owner, who was driving, in attempting to shift gears, temporarily lost control of the car, which proceeded rapidly down the road, gaining momentum and swerving from side to side, and while so proceeding insured disappeared from the car, and was found lying in the road, so severely injured that he died the following day. *Held* that, whether insured was thrown from the car or leaped from it in fright, the loss of control by the driver was the proximate cause of his death, and that it was within the liability assumed by the rider policy.

At Law. Action by Helen A. Wright against the Ætna Life Insurance Company. Trial to court, and judgment for plaintiff.

F. W. Wheaton, and P. F. O'Neill, both of Wilkes-Barre, Pa., and John P. Kelly, of Scranton, Pa., for plaintiff.

James P. Harris and W. A. Valentine, both of Wilkes-Barre, Pa., for defendant.

JOHNSON, District Judge. This is an action of assumpsit in which the plaintiff, Helen A. Wright, claims of the defendant, the Ætna Life Insurance Company, the sum of $15,000, with interest thereon from October 27, 1921, based upon an accident and life insurance policy, insuring Thomas A. Wright, husband of the plaintiff, Helen A. Wright, against disability and death.

The case was tried before the late Judge Charles B. Witmer and a jury, and a verdict was rendered on March 25, 1924, in favor of the plaintiff for $7,500, with interest from October 27, 1921. The plaintiff appealed to the Circuit Court of Appeals for the Third Circuit, and the judgment based upon the verdict of $7,500, with interest from October 27, 1921, was reversed and a new trial ordered. 10 F.(2d) 281.

On November 8, 1926, the parties by their counsel, agreed that the case should be tried before the court without a jury under the provisions of the act of 1874 (P. L. 109; Pa. St. 1920, §§ 17294–17298), of the commonwealth of Pennsylvania, and in accordance with this agreement, the case was tried before this court, without a jury, on the record of the said trial before the late Judge Witmer and the jury.

A brief history of the case as it appears from the pleadings and the evidence may be helpful at this point. A policy of insurance, dated October 9, 1907, was executed and delivered by the defendant to Thomas A. Wright for a yearly premium of $25, whereby the defendant company agreed to indemnify Thomas A. Wright, or the plaintiff, Helen A. Wright, in the case of his death, in the sum of $5,000 if the said Thomas A. Wright should come to his death by reason of an accident. The insurance contract also provides that "each consecutive full year's renewal of this policy, if paid annually, in advance, shall add 10 per cent. to the principal sum insured until such accumulations shall amount to 50 per cent. of said principal sum, and thereafter so long as this policy is maintained in force by annual premium payments the amount insured shall be the original principal sum plus the accumulations."

On August 31, 1910, an additional contract was entered into and attached to said policy of insurance, known as "automobile indorsement No. 50109," for an additional annual premium of $10, which provides for an additional, original, principal sum of $5,000, "in the event that Thomas A. Wright should sustain bodily injuries through external, violent, and accidental means, while he is riding in, operating, or caring for a private automobile." The "automobile indorsement No. 50109" provided also that the insurance will be increased 5 per cent. in the second and each subsequent year for ten consecutive years until such increases amount to 50 per cent. of the original sum insured, and thereafter the amount insured will be the original principal sum insured hereunder plus the accumulations.

On September 27, 1921, the insured, Thomas A. Wright, was riding down a steep mountain road in the private automobile of Alton M. Titlow, who was driving the automobile. In the descent the driver, while attempting to change gears, lost control of the car, and when he finally got the car under control, the insured, Thomas A. Wright, had

disappeared from the car, and going back the driver found Thomas A. Wright lying on the road unconscious, and so fatally injured that he died the next day. No one saw how or when Wright left the car. When the driver lost control of the car, Wright was in it, and, when control was regained, he was not in the car.

In the former trial, the late Judge Witmer instructed the jury in substance, that the plaintiff could not recover the additional insurance provided for under the "automobile indorsement No. 50109," if the jury found from the evidence that her decedent voluntarily left the automobile in which he was riding and in consequence met his death.

This instruction was assigned as error in the Circuit Court of Appeals, and held to be error by Judge Buffington, who wrote the opinion in reversing the court below.

From the pleadings and the evidence in the case, the court arrives at the following findings of fact:

(1) The plaintiff, Helen A. Wright, is a resident of the city of Wilkes-Barre, Pa., and is the widow of Thomas A. Wright, deceased.

(2) The defendant is a corporation, chartered under the laws of Connecticut, duly registered as a foreign corporation and doing business in the commonwealth of Pennsylvania, and was so registered and doing business as such foreign corporation on the 27th day of September, 1921.

(3) On October 9, 1907, Thomas A. Wright, the husband of the plaintiff, entered into a written contract of insurance for an annual premium of $25, whereby the Ætna Life Insurance Company agreed to indemnify the said Wright, or the plaintiff, Helen A. Wright, in case of her husband's death in the sum of $5,000, if the said Wright came to his death from bodily injuries effected solely from external, violent, and accidental means.

(4) On August 31, 1910, an additional contract of insurance was entered into and attached to said policy of insurance of October 9, 1907, known as "automobile indorsement No. 50109" for an additional annual premium of $10, which insurance provided for an additional original principal sum of insurance of $5,000 "in the event that Thomas A. Wright should sustain bodily injuries through external, violent, and accidental means while he is riding in, operating, or caring for a private automobile."

(5) The defendant company agreed in said policy of insurance that there should be added 5 per centum to the principal sum of insurance each consecutive full year's renewal of said policy until such accumulations shall amount to 50 per centum of the principal sum.

(6) From the time the said policy of insurance and the rider attached thereto became effective, the annual premiums were regularly paid, and the said policy with the rider was renewed from year to year and was in full force and effect, together with the 50 per centum of the accumulations of the principal sum of insurance on the 27th day of September, 1921.

(7) On September 27, 1921, the insured, Thomas A. Wright, was riding down a steep mountain road in Luzerne county, near Wilkes-Barre, Pa., in the middle federal judicial district in Pennsylvania, in a private automobile owned and operated at the time by Alton M. Titlow. In the descent the driver, while attempting to change from second gear to low gear, for the time being, lost control of his car, which proceeded rapidly down the mountain side, gaining momentum and swerving from side to side, and, while the driver was attempting to bring the car under control and to stop it, and while the car was thus proceeding down the mountain side for about 200 feet, the insured, Thomas A. Wright, disappeared from the car which proceeded an additional 300 feet, when it was brought to a stop.

(8) As the car was proceeding down the steep mountain road beyond the control of the driver, the insured, Thomas A. Wright, being in sudden peril of life and limb, or it reasonably appearing to him that he was in sudden peril of life and limb, either jumped from said automobile to save himself from the peril of life and limb, or by the swerving of the car was thrown out of the same, and as a result thereof he died on the 28th day of September, 1921.

(9) The insured, Thomas A. Wright, sustained bodily injuries through external, violent, and accidental means while he was riding in a private automobile operated by Alton M. Titlow on the 27th day of September, 1921, which resulted in his death on the 28th day of September, 1921.

(10) Helen A. Wright, is beneficiary under the terms of said policy of insurance and the rider attached thereto.

From the foregoing findings of fact, the court arrives at the following conclusions of law:

(1) Under the terms of the policy of insurance and the rider attached thereto for an additional insurance, the proximate cause of the death of the insured was loss of control of the automobile by the driver—whether the

insured was thrown from the said car or leaped therefrom in fright in his sudden peril.

(2) The decedent, Thomas A. Wright, came to his death by reason of bodily injuries through external, violent, and accidental means while he was riding in a private automobile.

(3) Under the terms of the said policy of insurance, the plaintiff, Helen A. Wright, is entitled to the sum of $7,500, with interest from the 27th day of October, 1921.

(4) Under the terms of the rider for additional insurance under said policy, the plaintiff, Helen A. Wright, is entitled to an additional sum of $7,500, with interest from the 27th day of October, 1921.

(5) The plaintiff, Helen A. Wright, under the terms of said policy and the rider thereto, is entitled to a judgment in the sum of $15,000, with interest from the 27th day of October, 1921, to wit, the sum of $19,725.

Counsel for the plaintiff requests the court to find the following facts:

"(1) On October 9, 1907, Thomas A. Wright, the plaintiff's husband, entered into a written contract of insurance for a yearly payment of a premium of $25, whereby the defendant company agreed to indemnify the said Thomas A. Wright, or the plaintiff, Helen A. Wright, in case of his death, in the sum of $5,000, if the said Thomas A. Wright come to his death by reason of an accident, as set forth in policy of insurance attached to the plaintiff's statement of claim.

"(2) On August 31, 1910, an additional contract was entered into, placed on and attached to said policy of insurance, known as 'automobile indorsement No. 50109,' for an additional premium of $10. Additional insurance was contracted to be paid by the defendant of $5,000 in the event that Thomas A. Wright should sustain bodily injuries through external violent and accidental means while riding in a private automobile. Said additional contract is attached to said policy forming part of the plaintiff's statement of claim.

"(3) The defendant agreed in said policy of insurance, that there should be added 5 per cent. to the principal sum each consecutive full year's renewal of said policy until such accumulations shall amount to 50 per cent. of the principal sum.

"(4) From the time said policy of insurance became effective and the rider attached thereto, the yearly premiums of insurance were paid, and said policy renewed from year to year, and were in full force and effect, together with the 50 per cent. accumulations to

the principal sum of said policy on September 27, 1921.

"(5) The insured, Thomas A. Wright, sustained bodily injuries through external, violent and accidental means while riding in a private automobile on September 27, 1921, which resulted in his death on September 28, 1921.

"(6) Under the terms of the policy of insurance and the rider thereon, Helen A. Wright was the beneficiary for the benefits and profits thereof.

"(7) On September 27, 1921, the insured, Thomas A. Wright, was riding down a steep mountain road in a private automobile of Alton M. Titlow, who was driving the same. In the descent the driver, Alton M. Titlow, in attempting to change from second gear to low gear, for the time being lost control of the car, and the same proceeded down the mountain side, gaining momentum in neutral, swerving from side to side, with the driver attempting to stop the same and bring same under control. While the car was thus proceeding down the mountain side for approximately 200 feet, the insured, Thomas A. Wright, left the car, and the car proceeded an additional 300 feet, when it was brought to a stop.

"(8) As the car was proceeding down the mountain side, beyond the control of the driver, the insured, Thomas A. Wright, being in sudden peril of his life and limb, or it reasonably appearing to him that he was in sudden peril of life and limb, either jumped from said automobile or, by the swerving of the car, he was thrown out of the same, and, as the result thereof, he died on the 28th of September, 1921."

The foregoing facts are found and confirmed by the court.

Counsel for the plaintiff requests the court to affirm the following conclusions of law:

"(1) Under the terms of the policy of insurance and the rider thereon for additional insurance, whether the insured was thrown from the said car or leaped therefrom in fright in his sudden peril, the proximate cause of the insured's death was due to the automobile getting beyond the control of the driver.

"(2) The decedent, Thomas A. Wright, came to his death by reason of bodily injuries sustained through external, violent, and accidental means while riding in a private automobile.

"(3) That under the terms of the said policy of insurance, the plaintiff, Helen A.

Wright, is entitled to the sum of $7,500, with interest from October 27, 1921.

"(4) That, under the terms of the rider for additional insurance under said policy, the plaintiff, Helen A. Wright, is entitled to an additional sum of $7,500, with interest from October 27, 1921.

"(5) The plaintiff, Helen A. Wright, under the terms of said policy and the rider thereon, is entitled to a judgment in the sum of $15,000, with interest from October 27, 1921, to wit, to a judgment for the sum of $ ———."

The above conclusions of law are affirmed by the court.

Counsel for the defendant requests the court to find the following facts:

"(1) No accident occurred while the insured, Thomas A. Wright, was riding in the automobile.

"(2). The driver of the automobile never lost control of the car."

The court refuses so to find.

Counsel for the defendant requests the court to affirm the following conclusions of law:

"(1) The plaintiff is not entitled to recover for double indemnity.

"(2) The plaintiff is entitled to judgment for $7,500, with interest from October 27, 1921."

The court refuses to affirm the above conclusions of law.

The law in this case is well stated by Buffington, Circuit Court Judge, in the opinion reversing the court below (Wright v. Ætna Life Insurance Co., 10 F.[2d] 281), where, on page 282, he said:

"(1) Taking, then, the removal most favorable to the company, namely, a leap by the insured from the car to save himself we have the question whether such a case is covered by this policy. The facts are undisputed, and it is therefore the duty of the court to construe the policy and decide whether it applies. Assuming, then, that the car got beyond control on this steep road, that the deceased was then sitting in it, and before control was regained leaped from the car to save himself as the jury found he did, is such a situation covered by the policy?

"(2) Addressing ourselves to the court's duty to construe the policy, we note that this is not a case of double indemnity on a single premium, but one of double or additional premium for an additional original indemnity; for the indemnity in this case is, as the policy recites, for 'an additional original principal sum of $5,000,' and for this particular indemnity an additional premium was paid. We therefore do not have a case of double indemnity, where the insured seeks to cover an exceptional situation not covered by its general terms, and where, referring to canons of policy construction, 'the court,' as said in Depue v. Travelers' Ins. Co. (C. C.) 166 F. 183, 'recognized that the situation had changed.' On the contrary, we have the usual situation of an original undertaking involving an individual indemnity based on an individual premium, and therefore governed by the construction canon that, when the words of a policy are, without violence, susceptible of two interpretations, that which will sustain the indemnity it was the object of the assured to obtain should be preferred. Insurance Co. v. Boon, 95 U. S. 128, 24 L. Ed. 395.

"Now, what was the object of the insured when he contracted for indemnity? There can be no doubt it was for his protection while riding in an automobile—protection against what? The answer is manifest: Against the dangers to which one riding in an automobile is subjected. Collision, overturning of machine, the machine leaving the road, etc., are naturally anticipated; but in the same category, and one of the grave dangers, especially in such a hilly and mountainous region as Pennsylvania, where, as appears by indorsement, this policy became effective, is loss of car control. But in loss of control on steep grades one of the most common happenings is the fright, and indeed hysteria, of a helpless passenger, which, coupled with the instinct of self-preservation, leads to his or her jumping from the car.

"Having, then, in view, as these contracting parties had, the dangers incident to riding in an automobile, and among them loss of car control on steep grades, is it possible to believe they shut out from consideration, and therefore from their contract as a common incident and consequence of that danger, the panic, hysteria, and self-preservation instinct naturally and reasonably to be expected in such a situation? Were these factors, common to the conduct of those suddenly confronted by danger, ignored, and their usual dangerous consequences not insured against? Was it contemplated that at such time the helpless passenger would and should sit supine, and run the risk of the machine colliding with other machines, with its being overturned, or with its leaving the road, in its uncontrolled descent? Was it contemplated the passenger, confronted by danger, panic-stricken by fear, must do nothing in order to have the benefit of his indemnity, when by leaping he might not only save his own life,

but the company as well from loss? For, indeed, to ignore, to fail to provide for, to rigidly constrain the car rider to supine inaction under such circumstances, and to say his policy so intended, is to fly in the face of common experience.

"Recognizing the usual incidents in collisions and accidents, the law has brought into its legal nomenclature the phrase 'in extremis,' and held that, where danger is faced in an accident, unwise action shall not prejudice a man, a vehicle, or a vessel. If one were insured while 'riding in a motorboat,' and circumstances arose where the steering gear ceased to control and the vessel was headed for a dam, rapid, or other vessel, and a frightened passenger jumped out to save himself, and thereafter succumbed and was drowned, while not riding in the motorboat, a reasonable man might contend that under such circumstances the passenger was covered by such policy, although actual death came from drowning. In the present case the real accident was not when Wright's head struck the road, but when car control was lost. Such lost car control was the critical accident time, and the dominating factor which subjected the riding passenger to present peril and later death.

"That constraining, existing accident might result in different, and to be expected, consequences; but in any event the accident of lost car control was the proximate cause of the rider's death, whether the swerving of the car threw him out physically, or the nervous strain caused him to leap in fright, hysteria, or in answer to the instinct of self-preservation. What followed was an injury more or less commonly incident to such lost car control. We cannot bring ourselves to the belief that the parties to this policy meant that this usual result of loss of car control was not to be covered by this policy, for, if it was, no one would care to pay a premium for automobile protection. To us it is more reasonable to believe that, assuming the insured desired protection 'while riding in' a car, and a fair-minded insurance company meant to sell and give him such protection, that the common contracting purpose of the two would be that the insured was to be protected from the time he started riding at a journey's beginning, and continued until he ceased riding at its end, and that the words 'while riding in' the car referred to the intervening riding time, and if, during such time, injury was suffered from an accident which might reasonably be expected to happen to one so 'riding in' a car, that the words 'while riding in' were

meant to cover and did cover a situation such as we now have.

"Automobile risks, automobile dangers, automobile occupants' conduct, were not new subjects of insurance study when this policy was executed. Indeed, an insurance company's knowledge of the subject, its wide experience with accidents and human conduct at such times, its commercial instincts and its desire to get business, would assure it that, if it wrote into its policy or said to an inquiring customer, 'This policy does not cover the case of leaping from a car when car control is lost,' no one would pay an extra premium for an indemnity that so failed to indemnify. If this company did not intend that one who jumped from a machine was not to be protected, it could have made that unambiguous in a few words. It considered the matter of exceptions, for it inserted four. If by its omission to do so it has couched the policy in such terms that reasonable men could reasonably contend, it applied to and covered a situation such as is now before us, we are justified under the settled rule of construction in resolving that ambiguity against the company and giving the policy such construction. To do otherwise would be to deprive one riding in a car of protection from one of the grave dangers incident thereto.

"So holding, we regard the case as one requiring the court itself to construe and apply the policy, and in the light of such construction to hold that, if the case is one where control of a car was lost, and that while lost an occupant suffered injury, the indemnity applied, whether he was thrown from the car by physical force, or, exercising ordinary care and prudence, he leaped from the car under mental force impelled by fright or the instinct of self-preservation. We therefore reverse the case, and remand it to the court below for further proceedings, in accord with this opinion.

"The conclusion we have reached is in accord in principle with the authorities, for in citing the case of Lund v. Tyngsboro, 11 Cush. (Mass.) 563, 59 Am. Dec. 159, as supporting its opinion, the Supreme Court of the United States, in Insurance Co. v. Boon, supra, said: 'In Lund v. Tyngsboro, * * * where it appeared that a traveler had been injured by leaping from his carriage, exercising ordinary care and prudence, in consequence of a near approach to a defect in a highway, the town was held liable, though the carriage did not come to the defect. The defect was regarded as the actual, the dominat-

ing, cause. And in this court similar doctrine has been asserted.' "

The above opinion by Judge Buffington covers the questions involved in this case so fully, clearly and convincingly that nothing further need be said by way of discussion.

And now, January 27, 1927, the court finds in favor of the plaintiff, Helen A. Wright, and against the defendant, the Ætna Life Insurance Company, in the sum of $15,000, with interest from the 27th day of October, 1921, to wit, $19,725.

Notice of this decision shall be given to the parties, or their attorneys, and, if no exceptions are filed thereto in the clerk's office at Scranton, within 30 days after service of such notice, judgment shall be entered thereon.